WILENTZ, GOLDMAN & SPITZER P.A.
Attorneys at Law
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey  07095
(732) 636-8000
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------X
Emergency Products Inc., a        :
New Jersey Corporation, and       :
Maryland Emergency Products       :
LLC, a Maryland Limited           :      Civil Action
Liability Corporation,            :
                                  :      COMPLAINT
            Plaintiffs,           :
                                  :
                                  :
v.                                :
                                  :
                                  :
Seagrave Fire Apparatus LLC,      :
a Limited Liability               :
Corporation, previously           :
known as Seagrave Fire            :
Apparatus, a Division of FWD      :
Corporation,                      :
                                  :
            Defendant.            :
------------------------------X

Plaintiffs, Emergency Products, Inc., a New Jersey Corporation ("EPI"), and Maryland Emergency Products LLC, a Maryland Limited Liability Corporation ("MEP"), by way of complaint against the defendant, Seagrave Fire Apparatus LLC, a Limited Liability Corporation previously known as Seagrave Fire Appraratus, a Division of FWD Corporation("Seagrave") say:

#3258092 (154386.001)

**Parties**

1. EPI is a New Jersey corporation with its principal place of business at 3400 Jessup Avenue, Thorofare, NJ 08086.

2. MEP is a Maryland limited liability corporation with its principal place of business at 9718 Pulaski Highway, Baltimore, MD 21220.

3. Seagrave is a limited liability corporation organized in Delaware with its principal place of business at 105 East 12th Street, Clintonville, WI 54929.

Jurisdiction

4. Plaintiffs are organized and have their principal places of business in New Jersey and Maryland. Seagrave is organized in Delaware and has its principal place of business in Wisconsin. Accordingly, there is complete diversity of citizenship between plaintiffs and defendant.

5. The amount in controversy, being the value of plaintiffs' wrongfully terminated franchises, monies due and payable by Seagrave to plaintiffs, costs incurred by plaintiffs in good faith in the expectation that their franchises would not be terminated before they had the opportunity to recoup those costs and other damages, exceeds $75,000.

6. As a result, this court had jurisdiction over this matter based on diversity of citizenship, 28 U.S.C. §1332.

<u>Venue</u>

7. Venue is this court is proper pursuant to 28 U.S.C. §1391 as Seagrave does business in this District and a substantial part of the acts and omissions that give rise to plaintiffs' causes of action occurred in New Jersey.

<u>First Count</u>

8. EPI repeats and realleges the allegations in paragraphs 1-7 and makes same a part hereof as if set forth at length.

9. In or about 1999, EPI became a dealer for Seagrave. At that time EPI and a predecessor of Seagrave entered into a Dealer Sales and Service Agreement ("DSSA") and various addenda and agreements ancillary thereto. Since 1999, EPI, Seagrave and Seagrave's predecessor have entered into various modifications, supplements and addenda to the DSSA and agreements ancillary thereto.

10. Pursuant to the DSSA as modified and supplemented and the ancillary agreements, EPI was authorized, <u>inter alia</u>, to

- Sell Seagrave Fire Apparatus to customers in its exclusive territory, the State of New Jersey

- Purchase parts and accessories from Seagrave for resale or for use in the repair of Seagrave apparatus

- To perform warranty service on apparatus covered by Seagrave warranties

-3-

- To utilize trademarks, service marks, trades names and other intellectual property of Seagrave in the conduct of its business

11. In addition, pursuant to the DSSA as modified and supplemented and the ancillary agreements, EPI was required, inter alia, to

- Comply with Seagrave's Sales Manual
- Deliver apparatus to customers and perform pre-delivery training
- Sell no competitive products
- Follow sales and collection procedures established by Seagrave
- Use only pre-approved advertising and promotional material
- Maintain a supply of parts deemed sufficient by Seagrave
- Perform warranty services on Seagrave apparatus
- Maintain certain levels of financial capability
- Maintain certain facilities and personnel for the performance of service work

12. The DSSA, as modified and supplemented, and the ancillary agreements, constitute a franchise as that term is defined in the New Jersey Franchise Practices Act. EPI is a

-4-

franchisee and Seagrave is a franchisor as defined in said Act, EPI's franchise is a franchise covered by the provisions of the Franchise Practices Act.

13. Pursuant to the Franchise Practices Act, a franchise may be terminated by a franchisor only for "good cause." "Good Cause" is defined as the failure of the franchisee to substantially comply with the terms of the franchise.

14. If a franchisor terminates a franchise without good cause, the injured franchisee is entitled to an award of damages, plus the franchisee's legal fees and costs. Damages are the value of the franchise as it would be agreed to by a willing buyer and a willing seller.

15. On July 2, 2009, Seagrave sent EPI a notice advising EPI that Seagrave was terminating EPI as a Seagrave dealer "effective 60 days from the date of [the] notice."

16. No basis for termination is set forth in the notice. As a result, Seagrave is precluded from claiming that the termination was for good cause.

17. Nevertheless, at all times up to and including the date on which EPI received the notice of termination EPI had fulfilled all obligations imposed on it under the franchise. EPI was one of Seagrave's leading dealers in terms of sales, service and customer satisfaction. In fact, just months before

the termination, in March 2009, EPI was honored as the Seagrave Dealer of the Year for 2008.

18. Pursuant to section 8.3 of the DSSA, Seagrave may terminate a dealer for cause only if one of the grounds for termination for cause set forth in that paragraph exist. None of the grounds for termination set forth in that section applied to EPI.

19. Accordingly, good cause did not exist for the termination of EPI and its termination was wrongful under the Franchise Practices Act.

20. In fact, on information and belief, EPI was terminated, in whole or in part, because its principal, Rob Mortka, served as a member of Seagrave's Dealer Council and in connection with his association with other dealers in that context advised Seagrave of shortcomings in its business operations. Termination for this reason violates the Franchise Practices Act in itself. That the termination may have been for this improper purchase is believed to be trued based on the fact that, although MEP was terminated as Seagrave's dealer in Maryland at the same time EPI was terminated, Seagrave entered into a subsequent agreement with Mr. Mortka's co-owner of MEP to continue doing service work in Maryland and Washington, D.C.

21. At the time of termination, Seagrave constituted the vast majority of EPI's sales, revenues and income. As a result of the termination, EPI has been substantially and seriously damaged.

WHEREFORE, EPI demands judgment against Seagrave for damages, prejudgment interest, attorneys fees, costs and such other and further relief as the Court deems just and proper.

### Second Count

22. EPI repeats and realleges the allegations in paragraphs 1-21 and makes same a part hereof as if set forth at length.

23. Since the Franchise Practices Act prohibits terminations without cause, pursuant to the provisions of Article 8 of the DSSA, Seagrave could terminate EPI only for cause.

24. By terminating EPI without cause, Seagrave breached the DSSA.

25. EPI has been seriously and substantially damaged by Seagrave's breach.

WHEREFORE, EPI demands judgment against Seagrave for damages, prejudgment interest, costs and such other and further relief as the Court deems just and proper.

### Third Count

26. EPI repeats and realleges the allegations in paragraphs 1-25 and makes same a part hereof as if set forth at length.

27. Pursuant to the DSSA, as modified and supplemented, and the ancillary agreements between them, EPI sold certain Seagrave apparatus for which it is entitled to certain payments and performed warranty service on vehicles covered by Seagrave's warranty.

28. Despite claim by EPI, Seagrave has failed and refused to pay the amounts due.

WHEREFORE, EPI demands judgment against Seagrave for damages, prejudgment interest, costs and such other and further relief as the Court deems just and proper.

### Fourth Count

29. EPI repeats and realleges the allegations in paragraphs 1-28 and makes same a part hereof as if set forth at length.

30. In reliance on the DSSA, as modified and supplemented, and the ancillary agreements, EPI, at the direction or with the knowledge of Seagrave, incurred expenses and costs for the development of its business, employees, facilities and customer relationships in the reasonable expectation that its agreement

with Seagrave would not be terminated by Seagrave before it had the opportunity to recoup and get the benefit of those expenses and costs.

31. By terminating the agreements without good cause before EPI had a reasonable opportunity to recoup and get the benefit of the expenses and costs it incurred, Seagrave acted in bad faith and in breach of its covenant to deal fairly with EPI.

32. EPI has been seriously and substantially damaged by Seagrave's wrongful conduct.

WHEREFORE, EPI demands judgment against Seagrave for damages, prejudgment interest, costs and such other and further relief as the Court deems just and proper.

### Fifth Count

33. MEP repeats and realleges the allegations in paragraphs 1-7 and makes same a part hereof as if set forth at length.

34. Several years ago, having no dealer in the Baltimore-Washington area, Seagrave asked EPI to take on that territory, EPI agreed, formed MEP and in or about 2007, MEP became a dealer for Seagrave. At that time, MEP and Seagrave entered into a Dealer Sales and Service Agreement ("DSSA") and various addenda and agreements ancillary thereto. Since 2007, MEP and Seagrave

have entered into various modifications, supplements and addenda to the DSSA and agreements ancillary thereto.

35. Pursuant to the DSSA as modified and supplemented and the ancillary agreements, MEP was authorized, <u>inter alia</u>, to

- Sell Seagrave Fire Apparatus to customers in its exclusive territory, the State of Maryland

- Purchase parts and accessories from Seagrave for resale or for use in the repair of Seagrave apparatus

- To perform warranty service on apparatus covered by Seagrave warranties

- To utilize trademarks, service marks, trade names and other intellectual property of Seagrave in the conduct of its business

36. In addition, pursuant to the DSSA as modified and supplemented and the ancillary agreements, MEP was required, <u>inter alia</u>, to

- Comply with Seagrave's Sales Manual

- Deliver apparatus to customers and perform pre-delivery training

- Sell no competitive products

- Follow sales and collection procedures established by Seagrave

- Use only pre-approved advertising and promotional material

- Maintain a supply of parts deemed sufficient by Seagrave

- Perform warranty services on Seagrave apparatus

- Maintain certain levels of financial capability

- Maintain certain facilities and personnel for the performance of service work

37. The DSSA, as modified and supplemented, and the ancillary agreements, constitute a franchise as that term is used in Maryland statutes. MEP is a franchisee and Seagrave is a franchisor.

38. Pursuant to Maryland statute, a franchise may be terminated by a franchisor only for "good cause." "Good Cause" is defined as the failure of the franchisee to comply with the reasonable requirements of the franchise.

39. If a franchisor terminates a franchise without good cause, the injured franchise is entitled to an award of damages, plus the franchisee's legal fees and costs.

40. On July 2, 2009, Seagrave sent MEP a notice advising MEP that Seagrave was terminating MEP as a Seagrave dealer "effective 60 days from the date of [the] notice."

41. No basis for termination is set forth in the notice. As a result, Seagrave is precluded from claiming that the termination was for good case.

42. Nevertheless, at all times up to and including the date on which MEP received the notice of termination MEP had fulfilled all obligations imposed on it under the franchise.

43. Pursuant to section 8.3 of the DSSA, Seagrave may terminate a dealer for cause only if one of the grounds for termination for cause set forth in that paragraph exist. None of the grounds for termination set forth in that section applied to MEP.

44. Accordingly, good cause did not exist for the termination of MEP and its termination was wrongful under the Act.

45. At the time of termination, Seagrave constituted the vast majority of MEP's sales, revenues and income. As a result of the termination, MEP has been substantially and seriously damaged.

WHEREFORE, MEP demands judgment against Seagrave for damages, prejudgment interest, attorneys fees, costs and such other and further relief as the Court deems just and proper.

<u>Sixth Count</u>

46. MEP repeats and realleges the allegations in paragraphs 1-7 and 33-45 and makes same a part hereof as if set forth at length.

47. Since Maryland statutes prohibit terminations without cause, pursuant to the provisions of Article 8 of the DSSA, Seagrave could terminate MEP only for cause.

48. By terminating MEP without cause, Seagrave breached the DSSA.

49. MEP has been seriously and substantially damaged by Seagrave's breach.

WHEREFORE, MEP demands judgment against Seagrave for damages, prejudgment interest, costs and such other and further relief as the Court deems just and proper.

### Seventh Count

50. MEP repeats and realleges the allegations in paragraphs 1-7 and 33-49 and makes same a part hereof as if set forth at length.

51. Pursuant to the DSSA, as modified and supplemented, and the ancillary agreements between them, MEP sold certain Seagrave apparatus for which it is entitled to certain payments and performed warranty service on vehicles covered by Seagrave's warranty.

52. Despite claim by MEP, Seagrave has failed and refused to pay the amounts due.

WHEREFORE, MEP demands judgment against Seagrave for damages, prejudgment interest, costs and such other and further relief as the Court deems just and proper.

### Eighth Count

53. MEP repeats and realleges the allegations in paragraphs 1-7 and 33-52 and makes same a part hereof as if set forth at length.

54. In reliance on the DSSA, as modified and supplemented, and the ancillary agreements, MEP, at the direction or with the knowledge of Seagrave, incurred expenses and costs for the development of its business, employees, facilities and customer relationship in the reasonable expectation that its agreement with Seagrave would not be terminated by Seagrave before it had the opportunity to recoup and get the benefit of those expenses and costs.

55. By terminating the agreements without good cause before MEP had a reasonable opportunity to recoup and get the benefit of the expenses and costs it incurred, Seagrave acted in bad faith and in breach of its covenant to deal fairly with MEP.

56. MEP has been seriously and substantially damaged by Seagrave's wrongful conduct.

WHEREFORE, MEP demands judgment against Seagrave for damages, prejudgment interest, costs and such other and further relief as the Court deems just and proper.

                        Wilentz, Goldman & Spitzer, PA
                        Attorneys for Plaintiffs

                        /s/Marvin J. Brauth
                        By:_____
                            Marvin J. Brauth
                            For the Firm

Dated: February 25, 2010

Of Counsel:
   B. Michael Borelli
   40 N. Woodbury-Glassboro Rd
   Pitman, New Jersey  08071

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of the Complaint so triable.

                        **WILENTZ, GOLDMAN & SPITZER, P.A.**
                        Attorneys for Plaintiffs

                        /s/Marvin J. Brauth
                        By

                        _____
                           MARVIN J. BRAUTH

Dated:  February 25, 2010

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

I hereby certify that, to the best of my knowledge, information and belief, the matter in controversy herein is not the subject of any other action pending in a court or of a pending arbitration or administrative proceeding, and that no other action or proceeding is contemplated.

                                        WILENTZ, GOLDMAN & SPITZER, P.A.
                                        Attorneys for Plaintiffs

                                        /s/Marvin J. Brauth
                                    By_____
                                            MARVIN J. BRAUTH

Dated: February 25, 2010